Entered: October 29th, 2025
Signed: October 29th, 2025
**SO ORDERED**



Nancy V. Alquist
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| In re:<br><br>SCARLETT B BOWMAN,<br><br>Debtor. | CASE NO. 25-12629-NVA<br><br>CHAPTER 13 |

### CERTIFICATION ORDER PURSUANT TO MARYLAND UNIFORM
### CERTIFICATION OF QUESTIONS OF LAW ACT AND MARYLAND RULE 8-305

Before this Court is an objection to a claim filed in the above-captioned bankruptcy case. Adjudicating the objection depends only on unsettled questions of Maryland state law and is necessary for the ultimate resolution of this bankruptcy case. Moreover, the questions—for which no existing authority exists—have implications beyond the province of this Court. Accordingly, this Court, exercising the privilege to certify questions of law pursuant to the Maryland Uniform Certification of Questions of Law Act and Maryland Rule 8-305, requests the Supreme Court of Maryland exercise its discretion and answer the questions presented in this Certification Order.

### Nature of Controversy[1]

Scarlett Bowman ("Debtor") owns a piece of residential property in Mount Airy, Maryland. [ECF No. 18 at 2]. In 2006, the Debtor obtained a home mortgage loan evidenced by a note

---

[1] The facts presented here are drawn from the record in this case.

("Note") and deed of trust ("Deed of Trust" and, with the Note, the "Loan"). [ECF No. 23 at 3]. On May 5, 2021, the Loan was assigned to Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee ("Towd"). *Id.* Towd filed a proof of claim ("Claim") in this bankruptcy case which claims, *inter alia*, interest and fees due under the Loan. [Claim 3]. Over the life of the Loan, Towd has applied payments toward interest, fees, and other charges in addition to principal.

The Debtor's objection (the "Claim Objection") challenges Towd's authority to apply loan payments it collected to interest, fees, and other charges because Towd is not licensed under the Maryland Mortgage Lender Law, Md. Code Ann., Fin. Inst. §§ 11-501 – 11-524. [ECF No. 18 at 3]. It is not disputed that Towd did not obtain a license, but the parties disagree that a license was required. In support of her Claim Objection, the Debtor cites to an Appellate Court of Maryland ("Appellate Court") 2024 opinion in *Estate of Brown v. Ward*, 261 Md. App. 385.

There, the Appellate Court was tasked with deciding whether a Delaware statutory trust was required to obtain a license under the Maryland Mortgage Lender Law where the trust was the assignee of a home equity line of credit and, thus, subject to the Credit Grantor Revolving Credit Provisions ("OPEC"), Md. Code Ann., Com. Law §§ 12-901 – 12-926. OPEC, in turn, requires licensure pursuant to the Maryland Mortgage Lender Law.[2] The Appellate Court concluded that trusts, including those like Towd, are required to be licensed.

In response to *Brown*, however, the Maryland General Assembly enacted emergency legislation—the Maryland Secondary Market Stability Act of 2025 (the "Act"), 2025 Md. Laws

---

[2] While the *Brown* court was asked to interpret OPEC and the applicable provisions in this case are the Creditor Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law §§ 12-1001 – 12-1030, there appears to be no relevant distinction between the two provisions. *See Brown*, 261 Md. App. at 411-12 (noting that the two provisions were enacted as "companion[s]" and going on to explain that both provisions set limits on interest and other fees in different lending situations).

Ch. 118. The Act could be read to reverse *Brown* and establish that trusts—like Towd—are now and always have been exempted from the licensing requirement. However, the wording of the legislation, and the legislative history associated with it, leaves doubt as to whether the General Assembly effectively exempts Towd from the licensing requirement as if *Brown* had not been decided. If not, and if Towd therefore needed to be licensed, is Towd precluded from collecting interest and fees from payments received prior to the statutory amendments which now exempt Towd from needing a license?

Specifically, the Act states its intention is to clarify existing exemptions to the Maryland Mortgage Lender Law. Act § 3 ("the intent of Section 1 of this Act is to clarify existing exemptions under State law."). To that end, the Act amends the language of the Maryland Mortgage Lender Law to include "a passive trust" as being excepted from the Maryland Mortgage Lender Law. Act § 1 (adding Md. Code Ann., Fin. Inst. § 11-502(b)(13)). Towd asks this Court to read the Act as meaning that Towd has always been exempted from obtaining a license. However, this Court finds ambiguity in the Act and its legislative history that obscures the General Assembly's intent.

On one hand, the Act purports to "*clarify*[] existing [licensing] exemptions under state law." Act § 3 (emphasis added). On the other, the Act "shall take effect from the date it is enacted." Act § 4. If the Act truly clarifies license exemptions, then a specific effective date is unnecessary.[3]

Given the ambiguity in the Act, the Court reviewed the Act's legislative history and found similarly confusing language. For example, Senator Beidle's written testimony supporting the Act indicates an intent to "return" the licensing requirements to the pre-*Brown* status quo *but also* an

---

[3] The Act does contain provisions—such as creating a Maryland Licensing Workgroup, Act § 2—for which the Act's effective date is necessary, but the Act does not contain language beyond "clarifying" which indicates that the provisions relating to license exemptions are meant as a retroactive statement of the law notwithstanding *Brown* as opposed to a prospective change made because of *Brown*.

3

intent to simply "reaffirm[]" the regulatory approach as it existed before *Brown*. Returning to the pre-*Brown* status quo seems to be a prospective act on the legislature's part—*i.e.*, concerned that *Brown* would significantly disrupt the secondary mortgage market, the General Assembly enacted prospective legislation that returns the exemptions to the license requirements to the way they had been before *Brown* changed the law. Reaffirming licensing exemptions, by contrast, would seem to be a retrospective statement of what the law *is*—both pre- and post-*Brown*.

At bottom of this dispute is whether Towd was required to be licensed before the Act was signed into law. To answer this question, we must first examine the interstice between *Brown* and the Act. While esoteric, the exercise is important and, in this Court's view, worthy of decision by the Supreme Court of Maryland. For example, Towd's claim in this bankruptcy case is likely overstated if it needed a license before the Act became law. Whether an unlicensed trust could collect interest and fees was not decided in *Brown*, but this Court notes that, because of the Act, no mechanism exists for trusts like Towd to obtain a license now.

## Questions Certified

The Court certifies the following questions of law to the Supreme Court of Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 12-605. The Court recognizes that the Supreme Court of Maryland may restate these questions as it sees fit. Md. Code Ann., Cts. & Jud. Proc. § 12-604.

> Because the Act purports to "clarify" the licensing exemption after *Brown*, does that mean the General Assembly successfully restored the licensing exemption for passive trusts as if *Brown* had not been decided?[4]
>
> Assuming the Act merely exempts passive trusts from the licensing requirement as of the date it was enacted, are passive trusts precluded from collecting interest and fees for the period prior to the Act's enactment given that no procedure exists for passive trusts to now obtain a license?

---

[4] If the General Assembly *could not* have restored the license exemptions to their pre-*Brown* posture by the language of the Act—perhaps as an impermissible legislative reversal of a court opinion—the second question certified remains ripe for decision.

4

**The Proposed Questions Determine This Proceeding and No Controlling Precedent Exists**

The answer to these questions does not appear to be directly controlled by any Maryland appellate decision, constitutional provision, or statute and the answer to this certified question is outcome-determinative of the parties' dispute in this Court because it will determine what, if any, amount Towd is entitled to collect from Debtor during the Debtor's bankruptcy case.

**The Parties and Their Counsel**

Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 12-606, the names and addresses of counsel of record are as follows:

| Debtor's Counsel | Towd's Counsel |
|---|---|
| Harris S. Ammerman, Esq.<br>Harris S Ammerman, Attorney LLC<br>1115 Massachusetts Avenue, N.W.<br>Washington, DC 20005 | John A. Nader, Esq.<br>Hinshaw & Culbertson, LLP<br>700 12th Street, N.W., Suite 700<br>Washington, DC 20005 |

For purposes of this certification procedure, Towd shall be the Appellant and the Debtor shall be the Appellee.

**Conclusion**

Pursuant to the privilege made available by the Maryland Uniform Certification of Questions of Law Act, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the questions set forth herein are certified to the Supreme Court of Maryland; and it is further

**ORDERED**, that this case is stayed pending receipt of the Supreme Court of Maryland's answer; and it is further

**ORDERED**, that the Clerk of Court shall forward to the Supreme Court of Maryland, under the official seal of this Court, an original and seven copies of this Order, together with copies of the record before this Court to the extent requested by the Supreme Court of Maryland.

cc: Debtor-Appellee – Scarlet B. Bowman
 Counsel for Debtor-Appellee – Harris S. Ammerman, Esq.
 Creditor-Appellant – Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee
 Counsel for Creditor-Appellant – John D. Nader, Esq.

**END OF CERTIFICATION ORDER**