IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| In re: SCARLETT BOWMAN,        ) | |
| ) | Chapter 13 |
| Debtor.                                     ) | Case No.: 25-12629-NVA |
| _____) | |

**OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN**

Claimant, Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee (the "**Trust**"), by counsel, respectfully submits its Objections to Confirmation of Chapter 13 Plan (the "Plan"), which was filed by Debtor, Scarlett Bowman (the "**Debtor**"). In support thereof, the Trust states as follows.

**The Loan**

1. Debtor is a party to a home mortgage loan (the "**Loan**") which is evidenced by a promissory note dated **December 8, 2006** (the "**Note**") in the original principal amount of $510,000.00 that was executed by Debtor. The Note was originally made payable to Pinnacle Financial Corporation d/b/a Tri-Start Lending Group ("**Pinnacle**"), and ultimately indorsed in blank. A copy of the Note and allonges thereto is attached as Exhibit "A".

2. Under the terms of the Note, Pinnacle was defined as the "Lender" and Debtor agreed that the "Lender may transfer this Note . . . [and] anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Ex. A at p. 1.

3. Debtor used the Loan to refinance a then-existing mortgage loan encumbering real property located at 1251 Shaffersville Road, Mount Airy, Maryland 21771 (the "**Property**").

1

4. To secure repayment of the Loan, Debtor granted a deed of trust ("**Deed of Trust**") over the Property with Pinnacle identified as the "Lender" and a separate corporation, Mortgage Electronic Registration Systems, Inc. ("**MERS**"), identified as beneficiary of the Deed of Trust but "solely as nominee for Lender and Lender's successor's and assigns." The Deed of Trust was recorded in the land records of the Circuit Court for Howard County, Maryland at Liber 10475, Folio 212. A copy of the Deed of Trust is attached as Exhibit "B." See Id. at p. 1-2.

5. The Note was transfered as follows:

| **Assignor** (from) | **Assignee** (to) | **Form of Transfer** | **Citation to Exhibit Hereto** |
|---|---|---|---|
| Pinnacle | IMPAC Funding Corporation | Note indorsed "without recourse, pay to the order of IMPAC Funding Corporation" | Ex. A at p. 3, 9, and 10 (duplicates) |
| IMPAC Funding Corporation | UBS Real Estate Securities, Inc. | Allonge to Note indorsed "pay to the order of UBS Real Estate Securities, Inc. without recourse" | Id. at p. 4 |
| UBS Real Estate Securities, Inc. | Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee from the RMAC REMIC Trust, Series 2010-1 | Allonge to Note indorsed "pay to the order of Wells Fargo Bank, NA not in its individual capacity but solely as Trustee for the RMAC REMIC Trust, Series 2010-1" | Id. at p. 5 |

| **Assignor**<br>(from) | **Assignee**<br>(to) | **Form of Transfer** | **Citation to Exhibit Hereto** |
|---|---|---|---|
| Wells Fargo Bank, N.A., not in its individual capacity but solely as Trustee from the RMAC REMIC Trust, Series 2010-1, by Rushmore Loan Management Services, LLC, its appointed attorney-in-fact | Blank | Allonge to Note indorsed "in blank" | Ex. A at p. 8 |
| Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee | The Trust | Possession | |

6. Similarly, the Deed of Trust was assigned as follows:

| **Date of Recordation** | **Grantor**<br>(from) | **Grantee**<br>(to) | **Citation to Exhibits Hereto** |
|---|---|---|---|
| July 30, 2013 | Mortgage Electronic Registration Systems, Inc., as nominee for Pinnacle Financial Corporation d/b/a Tri-Star Lending Group, it's successors and assigns | Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee from the RMAC REMIC Trust, Series 2010-1 | Exhibit "C" |
| October 5, 2016 | Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee from the RMAC REMIC Trust, Series 2010-1 | Mortgage Electronic Registration Systems, Inc. | Exhibit "D" |

3

| Date of Recordation | Grantor (from) | Grantee (to) | Citation to Exhibits Hereto |
|---|---|---|---|
| June 11, 2021 | Mortgage Electronic Registration System, as nominee for Pinnacle Financial Corporation D/B/A Tri-Star Lending Group, Its successors and assigns | FirstKey Mortgage, LLC | Exhibit "E" |
| June 11, 2021 | First Key Mortgage, LLC by Select Portfolio Servicing, Inc., its attorney-in-fact | The Trust | Exhibit "F" |

### The Federal Court Action

7. On **December 28, 2022**, Debtor filed a lawsuit against her Loan servicer, Select Portfolio Servicing, Inc. ("**SPS**"),[1] and others wherein she asserted several common law and statutory claims principally based on Debtor's contention that the Note was negotiated or transferred inconsistent with Maryland law, and, therefore, the Trust was not entitled to enforce the Note. That case was ultimately removed to the United States District Court for the District of Maryland on **February 21, 2023**, and assigned case number 1:23-cv-00452-JRR (the "**Federal Court Action**"). A copy of the district court's docket is attached as Exhibit "G."

---

[1] See POC at p. 1.

8. Following briefing on SPS' motion for judgment on the pleadings seeking to dismiss Debtor's Complaint, on **December 4, 2023**, the judge in the Federal Court Action issued a memorandum opinion and order (collectively, the "**Order**") granting that motion, and dismissing SPS. A copy of the Order is attached as Exhibit "H."

9. In the Order, the court explained that under Maryland law, because "SPS (on behalf of Towd Point) was holder of the Note . . . it was entitled to enforce [the] same. Further, because the right to enforce the Deed of Trust follows transfer of the Note . . . [the substitute trustees] had authority to initiate foreclosure proceedings." (Ex. H at p. 33).

10. On **January 16, 2024**, Debtor moved for reconsideration of the district court's opinion and dismissal order, but it was denied on **May 23, 2024**. (Ex. G at p. 7.)

11. Ultimately, on **May 5, 2025**, the district court considered and granted the co-defendant's motion for summary judgment, and closed the case. (Id.) Debtor never appealed the Order or the district court's summary judgment order. (Id.) As a consequence, the district court's finding that the Trust was the holder of the Note and its conclusion that it was entitled to enforce the Note is binding on Debtor and any contention otherwise is barred by res judicata.[2]

---

[2] Thomas v. Sack, 2019 U.S. Dist. LEXIS 37387, *16-17 (D.Md. Mar. 7, 2019), the district court explained that:

> Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147 . . . (1979). The doctrine is intended to preclude parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. Id. [440 U.S.] at 153-54.
>
> Res judicata applies when the following three elements are present: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." Young-Henderson v. Spartanberg Area Mental Health Ctr., 945 F.2d 770, 773 (4th Cir. 1991) (quoting Nash Cnty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981)). Notably, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata. Onawola v. Johns Hopkins Univ., . . . 2007 U.S. Dist. LEXIS 97446, at *1 (D. Md. Sept. 24, 2007); SEE RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) cmt. c (1982).

**The Default And Amounts Due Under the Loan**

12. Debtor defaulted on her obligations under the Loan by failing to make the payment due for <mark>July 1, 2020, and each payment due thereafter.</mark> As a result, on **November 11, 2022,** the substitute trustees appointed under the Deed of Trust filed an Order to Docket in the Circuit Court for Howard County under Case No. C-13-CV-22-000992 (the "**Foreclosure Case**"). The Foreclosure Case was stayed by the filing of this bankruptcy action.

13. As of the petition date, the total amount due and owing to the Trust in connection with the Loan was $685,412.76, which includes the unpaid principal balance of $525,62718, accrued interest of $102,364.21, an escrow advance balance of $40,426.61, plus $7,336.69 in fees and costs due. See Claim No. 3-1 (the "**Proof of Claim**") at p. 4.

14. Moreover, as of the petition date, the Debtor owes arrearages of $188,176.22, which includes the past due principal balance of $35,782.82, accrued interest of $100,881.26, an escrow advance balance of $40,426.61, projected escrow shortage of $3,748.84, plus $7,336.69 in fees and costs due. (Id.)

---

There is no question that the district court entered a final judgment in the Federal Court Action. In addition, any challenge by Debtor in ***this*** proceeding as to the Trust's right to enforce the Note and Deed of Trust would be properly considered the same legal claim she asserted in the Federal Court Action. And finally, because SPS is the Trust's Loan servicer, it "share[s] a mutuality of interest with respect to the Property," and SPS is in privity with the Trust for res judicata purposes. See Reid v. New Century Mortg. Corp., 2018 U.S. Dist. LEXIS 161561, *11-13 (D. Md. Sep. 20, 2018) (reiterating privity between a note holder, its loan servicer, and substitute trustees under the deed of trust) (collecting cases). Accordingly, res judicata bars any claim or challenge to the Trust's rights as holder of the Note and beneficiary of the Deed of Trust as a matter of law.

**The Bankruptcy Filing and the Plan**

15. On **March 27, 2025**, Debtor filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code with this Court (the "**Petition Date**"). (ECF No. 1.)

16. In her bankruptcy petition and schedules, Debtor admits that she lives in the Property (ECF No. 1 at p. 2), and although she owns other real estate (see id. at p. 11), she claims an exemption for the Property as her "residence" (id. at p. 17).[3] Moreover, Debtor's affidavit accompanying the Deed of Trust also represents (under oath), that she is the "original mortgagor" of that instrument, and that the "mortgaged [P]roperty is [her] principal residence." (Ex. B at p. 17.) Finally, the docket sheet lists Debtor's address at the Property. See docket sheet.

17. That same day, Debtor filed her Chapter 13 Plan (the "**Plan**"). (ECF No. 2.)

18. In Section 4.6.2 of the Plan, Debtor acknowledges the pre-petition Loan arrears in the amount of $185,173.93 owed to SPS and proposes to pay those arrearages through the Plan (by the chapter 13 trustee). (ECF No. 2 at p. 4.)

19. However, while the Plan states in Section 4.6.2 that Debtor will "directly pay post-petition payments beginning with the first payment due after filing the petition" for the Loan, the Plan does not set out the amount of the monthly post-petition payment that is proposed to be paid. (Id.) Moreover, Section 4.6.2 of the Plan references the SPS Loan as a "Claim[] Secured by Other Property" rather than it being secured by her principal residence. (Id.) As previously stated, the Property that secures the Loan is Debtor's principal residence.

---

[3] Claiming an exemption as to the Property pursuant to Md. Code Ann., Cts. & Jud. Proc., § 11-504(f)(1)(i)(2) which then refers to the exemption allowable under 11 U.S.C. § 522(d)(1) for "real property . . .the debtor uses as a residence). See also 11 U.S.C. § 101(13A)(A) (defining, in relevant part, the term "principal residence" as "a residential structure if used as the principal residence by the debtor . . . .")

**The Proof of Claim**

20. On **May 29, 2025**, the Trust filed its Proof of Claim asserting arrearages due as of the Petition of $188,176.22 and on-going payments (beginning April 1, 2025) in the amount of $3,190.20. (Claim Reg. Claim No. 3).[4] Debtor filed a written objection (the "**Objection**") to the Proof of Claim on **July 5, 2025**. (ECF No. 18). Debtor's Objection assets that the Trust was a "unlicensed lender" under Md. Code Ann., Fin. Inst., § 11-523(b) and as a consequence of Estate of Ward v. Brown, 261 Md.App. 385 (2024). Based on this assertion, Debtor seeks an order from this Court requiring the Trust to apply *all* pre-petition payments that "were previously applied to interest to the principal" due under the Loan (ECF No. 18 at p. 7). Debtor also contended that future Loan payments must be credited "toward principal until licensure is obtained."

21. On **October 29, 2025, a**fter the Trust responded to Debtor's Objection (explaining that the Trust was never required to obtain a "lender's license" under Maryland law, and that the Trust was expressly exempt from obtaining a license through remedial legislation passed by the General Assembly) (ECF No. 23 at p. 7-13), the Court entered an order certifying questions of state law to the Supreme Court of Maryland, and answers to which this Court characterized as outcome determinative of the Debtor's Objection. Briefing before the Supreme Court of Maryland continues, while oral arguments in that proceeding is scheduled for **March 6, 2026**.

22. On **December 17, 2025,** the Court continued the hearing on the Plan until **February 18, 2026**.

---

[4] The on-going post-petition payment includes principal and interest of $2,440.43 and escrow of $749.77. (Id.)

**Objections to the Plan**

*Debtor seeks to modify the Loan by demanding a reduction of her monthly payment and the balance due contrary to the prohibition of 11 U.S.C. § 1322(b)(2)*

23. Debtor's Plan cannot be confirmed because it impermissibly attempts to modify the terms of the Loan (and the Trust's rights) contrary to 11 U.S.C. § 1322(b)(2).

24. Section 1322(b)(2) provides, in pertinent part, that that "the [Chapter 13] plan may . . . modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*." 11 U.S.C. § 1322(b)(2).

25. "The bankruptcy courts have consistently interpreted the no modification provision of § 1322(b)(2) to prohibit *any* fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note." Litton v. Wachovia Bank (In re Litton), 330 F.3d 636, 643 (4th Cir. 2003) (emphasis added). The Court of Appeals for the Fourth Circuit has reaffirmed that basic rule when rejecting attempts to alter default interest rates preceding a bankruptcy (see Anderson v. Hancock, 820 F.3d 670, 675 (4th Cir. 2016)), or to "reduce[] the principal due on the loan." Hurlburt v. Black, 925 F.3d 154, 160 (4th Cir. 2019). Indeed, this Court has explained that "subsection (b)(2) *dictates a rather inflexible treatment for claims secured by a debtor's principal residence*." Fannie Mae v. Griffin (In re Griffin), 489 B.R. 638, 641 (D.Md. 2013) (emphasis added).

26. In analyzing the purpose of § 1322(b)(2), the Court of Appeals for the Fourth Circuit explained that "while Congress meant to allow debtors to decelerate and get a second chance at paying their loans, 'home-mortgagor lenders, performing a valuable social service through their loans, needed special protection against modification,' including modifications that

would 'reduc[e] installment payments.'" Anderson, *supra*, 820 F.3d at 674 (quoting Grubbs v. Houston First Am. Sav. Ass'n, 730 F.2d 236, 246 (5th Cir. 1984)).

27. Debtor admits that she lives at the Property, and that it is her principal residence. See ¶ 16, *supra*. Despite this, Section 4.6.2 of the Plan fails to designate the full monthly post-petition amount due to SPS and to recognize the claim of SPS as being secured by her principal residence.[5]

28. Without a clear statement as to the amount of the post-petition payment that Debtor intends to make to SPS, it is unclear what treatment Debtor is proposing. As a claim secured by Debtor's principal residence, Debtor must propose to pay the full post-petition payment due on the Loan, which is not subject to modification. See In re Bowman, 2026 Bankr. LEXIS 324, *7-8 (Bankr. D.Md. Feb. 6, 2026) (quoting 11 U.S.C. § 1322(b)(2) (emphasis in original) (stating that the Court "***may not*** confirm a debtor's chapter 13 plan over a creditor's objection if the debtor attempts to modify the rights of a secured creditor whose claim is 'secured only by a security interest in real property that is the debtor's principal residence.'")

29. For this reason, the Plan should not be confirmed unless and until Debtor proposes to pay the full amount of the post-petition payments due under the Loan.

---

[5] In fact, in Debtor's Objection, she specifically and unequivocally stated that she was seeking a "newly ***calculated principal amount . . . reducing [the Trust's] allowed pre-petition arrears claim***" in addition to relief crediting interest payments towards the principal Loan balance. (ECF No. 18 at p. 7) (emphasis added).

*The Plan fails to include the full arrearage amount owed to the Trust as of the Petition Date and Debtor seeks to avoid Loan payments through the Chapter 13 Trustee*

30. The Plan fails to include the full arrearage amount owed to the Trust as of the Petition Date, and it does not meet the requirements of 11 U.S.C. § 1322(b)(3) and (b)(5) and 1325(a)(5) with respect to the Loan, and therefore, fails to meet the confirmation requirements of 11 U.S.C. § 1325(a)(1).

31. As stated in the Proof of Claim, the arrearages owed as of the Petition Date are $188,176.22. (Claims Reg., Claim No. 3). However, the Plan proposes to pay arrearages of only $185,175.93. Again, because the claim is secured by the Property (which is Debtor's principal residence) Debtor's Plan must propose to pay the full amount of arrearages owed to SPS on behalf of the Trust. It fails to do so as, as a result, should not be confirmed.

32. Based on the foregoing, the Plan fails to provide for the full amount of post-petition payments due on the Loan and also fails to provide for the full amount of arrearages due as of the Petition Date. For this reason, the Trust objects to the Plan and requests that confirmation of the Plan be denied.

33. The Trust reserves the right to further supplement this objection.

Accordingly, for the foregoing reasons, Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee, respectfully objects to confirmation of Debtor's proposed Plan, and it requests an order denying confirmation of the Plan along with any further relief this Court deems necessary and just.

Respectfully submitted,

/s/ John A. Nader
John A. Nader (Bar No. 17718)
HINSHAW & CULBERTSON, LLP
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel.: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com

*Co-counsel for Claimant,
Towd Point Mortgage Trust 2016-4,
U.S. Bank National Association as Indenture Trustee*

## CERTIFICATE OF SERVICE

I certify that on February 11, 2026, I filed the foregoing Objection with the Clerk of the Court using the CM/ECF system which then transmitted a Notice of Electronic Filing and to whom copies of the Objection were served by email on:

| | |
|---|---|
| Keith R. Havens, Esq.<br>2401 Research Boulevard<br>Suite 308<br>Rockville, MD 20850<br><br>*Counsel for Debtor, Scarlett Bowman* | Mark D. Meyer, Esq.<br>ROSENBERG & ASSOCIATES, LLC<br>3440 East West Highway, Suite 600<br>Bethesda, MD 20814<br><br>*Co-counsel for Claimant,<br>Towd Point Mortgage Trust 2016-4,<br>U.S. Bank National Association<br>as Indenture Trustee* |
| Rebecca Herr, Esq.<br>185 Admiral Cochrane Drive<br>Suite 240<br>Annapolis, MD 21401<br><br>*United States Trustee* | |

/s/ John A. Nader
John A. Nader

12

1089220\328065260.v1